1  FRIEDMAN DUMAS & SPRINGWATER LLP
   ROBERT L. FLEISCHMAN (S.B. NO. 80045)
2  CECILY A. DUMAS (S.B. NO. 111449)
   BRANDON C. CHAVES (S.B. NO. 225595)
3  150 Spear Street, Suite 1600
   San Francisco, CA 94105
4  Telephone Number:  (415) 834-3800
   Facsimile Number:  (415) 834-1044
5
   Attorneys for Plaintiffs
6  SECURITY INSURANCE COMPANY OF
   HARTFORD, THE FIRE & CASUALTY
7  INSURANCE COMPANY OF CONNECTICUT,
   THE CONNECTICUT INDEMNITY COMPANY
8
                  UNITED STATES DISTRICT COURT
9
                  EASTERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  SECURITY INSURANCE COMPANY OF HARTFORD, a corporation; The FIRE & CASUALTY INSURANCE COMPANY OF CONNECTICUT, a corporation; and THE CONNECTICUT INDEMNITY COMPANY, a corporation, | Case No. 2:05-CV-02620 DFL DAD **STIPULATION FOR ENTRY OF JUDGMENT AND DISMISSLAL BETWEEN PLAINTIFF AND DEFENDANT JASON A. GAMACHE** |

14                   Plaintiffs,

15        vs.

16  CIBUS INSURANCE SERVICES, INC.,
    a corporation; GEORGE P. HAGOSIAN,
17  an individual; and JASON A.
    GAMACHE, an individual,
18
19                   Defendants.

20

21        Security Insurance Company of Hartford ("Security") and Jason A. Gamache

22  ("Gamache") (Security and Gamache together, the "parties") stipulate as follows:

23        I.    RECITALS

24        This Stipulation is entered into upon the basis of the following facts,

25  understandings, and intentions of the parties:

26        A.    Security is an insurer licensed in California to issue various types of

27  insurance coverages, including workers compensation insurance.

28

B.      In 2000 and 2001, Cibus Insurance Services, Inc. ("Cibus") was an insurance agency operating in the State of California.  Gamache was Cibus' Chief Financial Officer during that time period and was a member of Cibus' Board of Directors and a shareholder in Cibus.

C.      In 2000 and 2001, Cibus entered into certain Program Administrator Agreements with Security, The Fire & Casualty Insurance Company of Connecticut ("FCIC"), and The Connecticut Indemnity Company ("CIC", and together with FCIC and Security, the "Plaintiffs").  Plaintiffs subsequently merged into a single entity with Security emerging as the surviving entity.  Under the Program Administrator Agreements, Cibus acted as Plaintiffs' agent from January 1, 2000 through December 31, 2001.  As Plaintiffs' agent, Cibus was authorized to underwrite and sell workers compensation insurance on behalf of Plaintiffs, and to bill, collect and hold insurance premium funds as Plaintiffs' fiduciary and to report the same on a monthly basis to the Plaintiffs.

D.      In connection with the Program Administrator Agreements, Plaintiffs entered into a Quota Share Treaty Reinsurance Agreement (the "Reinsurance Agreement") with Sinser Insurance Company ("Quest") pursuant to which Quest agreed to accept a substantial portion of the risk assumed by Plaintiffs in policies issued by the Plaintiffs.  Cibus guaranteed certain of Quest's obligations to Plaintiffs pursuant to a Captive Reinsurance Guaranty and Indemnity Agreement (the "Guaranty") executed by Cibus.

E.      Certain disputes have arisen between Plaintiffs and Cibus, Gamache, and George Hagosian ("Hagosian," and together with Gamache and Cibus, the "Defendants") concerning the Program Administrator Agreements, Reinsurance Agreement, and Guaranty. As a result of the disputes, on December 27, 2005, Plaintiffs commenced this action (the "Action") against the Defendants.

F.      Plaintiffs' complaint alleges that, as a result of the acts and/or omissions of Cibus, Hagosian, and Gamache, Plaintiffs have suffered damages in an amount in excess of $1.8 million.  Plaintiffs have asserted claims for breach of the Program Administrator Agreements against Cibus, claims for amounts due under the Guaranty against Cibus and

1  Hagosian, and claims for breach of fiduciary duty, tortious interference with contractual

2  relationship, negligent misrepresentation, and conversion against Cibus, Hagosian, and

3  Gamache.

4         G.     A default has been entered against Cibus, and Magistrate Judge Dale A.

5  Drozd has made findings of fact and recommendations that a judgment in the amount of

6  $1,817,236.75 be entered against Cibus.  Gamache does not dispute that Plaintiffs have

7  suffered losses of over $1.8 million as a result of Cibus' breach of the Program Administrator

8  Agreements and Cibus' failure to pay under the Guaranty.

9         H.     To settle and resolve any and all claims and controversies between them

10 arising out of, connected with, or otherwise related to this Action, Gamache and Security

11 have entered into a Confidential Settlement and Release Agreement ("Settlement

12 Agreement") whereby Gamache has agreed to make certain payments to Security.  Gamache

13 further agreed that a judgment may be entered against him as set forth in this Stipulation if he

14 fails to make payments according to the Settlement Agreement.

15         BASED ON THE FOREGOING RECITALS, THE PARTIES AGREE AS

16 FOLLOWS:

17         1.     Payment.  Gamache will pay to Security the amounts set forth in the

18 Settlement Agreement.

19         2.     Dismissal.  Upon Gamache's complete performance of all obligations

20 under the Settlement Agreement, Security will dismiss this Action with prejudice with respect

21 to Gamache.

22         3.     Entry of Judgment.  If Gamache fails to make any payment as set forth

23 in paragraph 1, then Security may, at any time and without further notice to Gamache, make

24 an ex parte application to the Court to enter a final judgment in the amount of nine hundred

25 thousand dollars ($900,000.00) in the form attached hereto as Exhibit A.  The written

26 declaration of Security or its attorney shall be prima facie proof that Gamache has failed to

27 make payments as required by the Settlement Agreement.

28         4.     Miscellaneous.

(a)     <u>Judgment May Be Non-Dischargeable In Bankruptcy</u>.  Gamache acknowledges that he is aware that under Section 523(d) of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), a discharge under Sections 727, 1141, 1228(a), 1228(b), or 1328(b) of the Bankruptcy Code does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, for embezzlement, or larceny.

(b)     <u>Additional Documents</u>.  Each of the parties agrees to execute such other and further documents as may be reasonably required by the other parties to carry out the purposes and intent of this Stipulation, or to evidence anything contained herein.

(c)     <u>Counterparts</u>.  This Stipulation may be executed in counterparts, and when a counterpart has been executed by each of the parties, the counterparts so executed shall constitute a fully binding and complete Stipulation.  Signature pages may be delivered separately in original, photocopy, or fax, and are effective when so delivered.

APPROVED AS TO FORM AND CONTENT

_____

By:  Jason A. Gamache
Defendant in *pro se*
Dated:  March _____, 2007

APPROVED AS TO FORM AND CONTENT

FRIEDMAN DUMAS & SPRINGWATER LLP        SECURITY INSURANCE COMPANY OF HARFORD

_____         _____

By:  Robert L. Fleischman                     By: _____
As counsel for Security Insurance Company of      Dated:  March _____, 2007
Hartford
Dated:  March _____, 2007

1   IT IS SO ORDERED

2   /s/ David F. Levi_____

3   UNITED STATES DISTRICT COURT JUDGE
4   Dated:  April 26, 2007

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28